IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Steve Spinks, Jeff Spinks and         )
Whitney Spinks,                       )         C.A. No. 6:07-2619-HMH
                                      )
            Plaintiffs,               )         **OPINION & ORDER**
                                      )
      vs.                             )
                                      )
The Krystal Company,                  )
                                      )
            Defendant.                )

This matter is before the court on the Defendant's motion to compel arbitration pursuant to 9 U.S.C. § 2 of the Federal Arbitration Act ("FAA") and stay the action. For the reasons set forth below, the court grants the Defendant's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The case arises from two franchise agreements between Spinks Investments, Inc. ("Spinks Investments") and the Defendant to operate two Krystal restaurants, one in Liberty and one in Greenville, South Carolina. The Liberty franchise agreement was executed on May 11, 2004. (Def.'s Mem. Supp. Mot. Compel Arbitration Ex. 1 (Liberty Franchise Agreement).) The same day, the Plaintiffs executed a guaranty agreement for the Liberty franchise agreement. (Id. Ex. 3 (Liberty Guaranty).) The Greenville franchise agreement was executed on June 22, 2004. (Id. Ex. 2 (Greenville Franchise Agreement).) Likewise, the same day, the Plaintiffs executed a guaranty agreement for the Greenville franchise agreement. (Id. Ex. 4 (Greenville Guaranty).) According to the Defendant, Spinks Investments abandoned the Liberty restaurant on March 18, 2007, and abandoned the Greenville restaurant on April 1, 2007. (Id. 2.) The Defendant sent a

1

demand for arbitration to Spinks Investments dated June 8, 2007, seeking to recover damages as a result of Spinks Investments' abandonment of the two franchises.  (Def.'s Mem. Opp'n Mot. Remand Ex. 8 (Demand for Arbitration).)  The Defendant named the Plaintiffs as respondents in the demand for arbitration.

The franchise agreements contain an arbitration provision.  Paragraph 24.A.(4) of the franchise agreements provides in pertinent part that

> [e]xcept as specifically otherwise provided in Paragraph 24.A.(4) regarding Krystal's right to seek preliminary and/or or [sic] permanent injunctive relief in a court of law, any and all disputes and controversies between Krystal and Franchisee and any claim by either party that cannot be amicably settled shall be determined exclusively by arbitration conducted in Hamilton County, Tennessee in accordance with the Uniform Arbitration Act, Tennessee Code Annotated § 29-5-301 et seq. . . . .

(Def.'s Mem. Supp. Mot. Compel Arbitration Ex.1 (Liberty Franchise Agreement) & Ex. 2 (Greenville Franchise Agreement).)  The guaranty agreements were attached to the franchise agreements and made exhibits thereto.  The guaranty agreements provide that each guarantor "agrees to be personally bound by . . . each and every provision in the Franchise Agreement." (Id. Ex. 3 (Liberty Guaranty) & Ex. 4 (Greenville Guaranty).)  The guaranty agreements are governed by Tennessee law.  (Id.)

 On March 18, 2007, Spinks Investments allegedly closed and abandoned the Liberty restaurant.  (Def.'s Mem. Supp. Mot. Dismiss 3.)  On April 1, 2007, Spinks Investments allegedly closed and abandoned the Greenville restaurant.  (Id. 3.)  The Defendant alleges that it notified Spinks Investments that they were in default of the Franchise Agreements on March 19, 2007, and April 2, 2007, respectively.

On June 8, 2007, the Defendant alleges that it forwarded notice to Spinks Investments and the Plaintiffs notifying them of the Defendant's intent to proceed with a demand for arbitration with the American Arbitration Association.  (Id.)  On June 25, 2007, the Plaintiffs filed suit in the Court of Common Pleas of Greenville County, South Carolina seeking a declaration that

> (1) the two alleged guaranty agreements are unenforceable and void; (2) the Spinkses are not obligated to Krystal for any damages it alleges it has suffered as a result of any actions or omissions by Spinks Investments; and (3) regardless of whether the alleged guaranty agreements are otherwise enforceable, the Spinkses are not subject to arbitration of any dispute arising under the alleged guaranty agreements or the franchise agreements to which Krystal alleges they pertain.

(Pls.' Compl. ¶ 29 and prayer for relief.)  The Defendant removed this action to this court on July 25, 2007, on the basis of diversity jurisdiction.  See 28 U.S.C. § 1332. The Defendant filed a motion to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure on August 1, 2007.  The Plaintiffs filed a motion to remand on August 8, 2007, alleging that the requirements for diversity jurisdiction had not been met.  On the same day, the Plaintiffs filed a motion to stay or, in the alternative, motion for extension of time to respond to the Defendant's motion to dismiss.  The court denied the Plaintiffs' motion to remand on September 4, 2007. The Plaintiffs responded to the Defendant's motion to dismiss on September 11, 2007.  On September 21, 2007, the Defendant replied.  The court denied the Defendant's motion to dismiss pursuant to Rule 12(b)(3) on September 26, 2007.  The Defendant filed the instant motion on November 16, 2007, and the Plaintiffs responded on December 4, 2007.

## II. DISCUSSION OF THE LAW

The Defendant moves to compel arbitration.  Section 2 of "[t]he [FAA] applies to contracts 'evidencing a transaction involving commerce to settle by arbitration a controversy

thereafter arising out of such contract.'" <u>Long v. Silver</u>, 248 F.3d 309, 315 (4th Cir. 2001)

(quoting 9 U.S.C. § 2). "Under the Federal Arbitration Act, a party may demand a stay of

federal judicial proceedings pending exercise of a contractual right to have the subject matter of

the federal action decided by arbitration, unless the party seeking arbitration is 'in default' of

that right." <u>Microstrategy, Inc. v. Lauricia</u>, 268 F.3d 244, 249 (4th Cir. 2001) (internal quotation

marks omitted). In addition, the Supreme Court has announced a strong federal policy favoring

arbitration. <u>See</u> <u>id.</u> at 316 (citing <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460

U.S. 1, 24-25 (1983)). The FAA "establishes that, as a matter of federal law, any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the

problem at hand is the construction of the contract language itself or an allegation of waiver,

delay, or a like defense to arbitrability." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>,

460 U.S. 1, 24-25 (1983). To that end, "the heavy presumption of arbitrability requires that

when the scope of the arbitration clause is open to question, a court must decide the question in

favor of arbitration." <u>Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.</u>, 867 F.2d 809, 812

(4th Cir. 1989). Thus, the court may not deny a party's request to arbitrate an issue "unless it

may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute." <u>Id.</u>

 "[A] federal court may consider only issues relating to the making and performance of

the agreement to arbitrate." <u>Prima Paint v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 404

(1967). "[F]ederal courts may not address the validity or enforceability of the contract as a

whole." <u>Ticknor v. Choice Hotel Int'l, Inc.</u>, 265 F.3d 931, 937 (9th Cir. 2001) (citing <u>Prima

Paint</u>, 388 U.S. at 401).

4

## A. Arbitration Clause

The Plaintiffs argue that they did not agree to submit any claims to arbitration because the guaranty agreements do not contain an arbitration clause, and further, the guaranty agreements do not specifically incorporate the arbitration provision contained in the franchise agreements. In deciding whether a party agreed to arbitrate a particular dispute, "the court should apply ordinary state-law principles that govern the formation of contracts." Johnson v. Circuit City Stores, 148 F.3d 373, 377 (4th Cir. 1998) (internal quotation marks omitted). The guaranty agreements provide that they are "governed by and construed in accordance with the laws of the State of Tennessee." (Def.'s Mem. Supp. Mot. Compel Arbitration Ex. 3 (Liberty Guaranty) & Ex. 4 (Greenville Guaranty).)

Under Tennessee law, generally, "arbitration clauses are not binding on third parties who are not parties to the contract." Cocke County Bd. of Highway Comm'rs v. Newport Utilities Board, 690 S.W.2d 231, 237 (Tenn. 1985). However, "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." Javitch v. First Union Sec., Inc., 315 F.3d 619, 629 (6th Cir. 2003). "Five theories for binding nonsignatories to arbitration agreements have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." Id. "[A] subcontract with a guarantor or surety may incorporate a duty to arbitrate by reference to an arbitration clause in a general contract." Gingiss Int'l, Inc. v. Bormet, 58 F.3d 328, 331 (7th Cir. 1995). In Gingiss, the court found that the franchise agreement was incorporated by reference into the guaranty agreement, which stated that the guarantors "agreed to be bound by all obligations of" the franchisee "under the franchise agreement as if each was the franchisee." Id. at 330. Further, the court found that

5

the guaranty "expressly incorporated the arbitration clause." Id. at 331-32. In addition, in Maxum Foundations, Inc. v. Salus Corp., the United States Court of Appeals for the Fourth Circuit found that an arbitration clause in a general contract was incorporated by reference in a subcontract, which stated that "[t]o the extent applicable to, or arising in connection with, the Work, the Subcontractor shall be bound by, and expressly assumes for the benefit of the Contractor, all obligations and liabilities which the Contract Documents impose upon the Contractor." 779 F.2d 974, 979 (4th Cir. 1985). Notably, the subcontract did not specifically incorporate the arbitration provision in the general contract. Id.; see also Philip L. Bruner and Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law, 6 Bruner & O'Connor Construction Law § 20:32 (West 2007) ("As a general rule broad general incorporation language is sufficient to capture an arbitration provision, particularly when the federal policy favoring arbitration is factored into the equation.").

In Exchange Mut. Ins. Co. v. Haskell Co., 742 F.2d 274, 276 (6th Cir. 1984), the Sixth Circuit found that an arbitration provision in a subcontract was incorporated in a performance bond. The court found that

> the performance bond specifically referred to and incorporated the subcontract. The subcontract provides that the same obligations and responsibilities apply in the subcontract as apply in the general contract. And, finally, the general contract provides that there is a duty to arbitrate. Thus, the performance bond incorporates by reference the subcontract, the subcontract incorporates by reference the general contract and hence the duty to arbitrate.

Id. Again, the arbitration provision was not specifically incorporated in the performance bond.

The Plaintiffs rely on Morrie & Shirlee Mages Foundation v. Thrifty Corp., to support their argument that the arbitration provision must be explicitly incorporated in the

6

guaranty agreements.  916 F.2d 402 (7th Cir. 1990), <u>overruled on other grounds by</u>, <u>IDS</u>

<u>Life Ins. Co. v. SunAmerica, Inc.</u>, 103 F.3d 524 (7th Cir. 1996).  The Seventh Circuit

noted that "[t]he Guaranty does not contain an arbitration clause and does not incorporate

the arbitration provision of the Agreement between the Mages and [a subsidiary of

Thrifty]. . . ."  <u>Id.</u> at 406 n.1.  However, the court finds that <u>Thrifty</u> is not persuasive in

light of the fact that the court did not indicate whether the guaranty incorporated the terms

of the main agreement generally.

    In the instant action, the guaranty agreements signed by the Plaintiffs state that they were

entered into "in consideration of, and as an inducement to, the execution of" the franchise

agreements.  (Def.'s Mem. Supp. Mot. Compel Arbitration Ex. 3 (Liberty Guaranty) & Ex. 4

(Greenville Guaranty).)  Further, the guaranty agreements state that the Plaintiffs "agree[] to be

personally bound by . . . each and every provision in the [Franchise] Agreement, both monetary

obligations and obligations to take or refrain from taking specific actions or to engage or refrain

from engaging in specific activities, including without limitation the provisions of Paragraphs 9

and 12." (<u>Id.</u> Ex. 3 (Liberty Guaranty) & Ex. 4 (Greenville Guaranty).)   Based on the plain

language of the guaranty agreements and the case law discussed above, the arbitration provisions

in the franchise agreements were incorporated into the guaranty agreements.  Therefore, the

Plaintiffs are obligated to arbitrate Krystal's claims pursuant to the arbitration clause in the

franchise agreements.

     The Plaintiffs argue that "even if the Court finds that the alleged guaranty agreements

incorporate an arbitration clause, Plaintiffs did not personally sign the alleged guaranty

agreements and, therefore, may not be compelled to arbitrate."  (Pls.' Mem. Opp'n Mot. Compel

Arbitration 1.)  However, this issue concerns the enforceability of the contract generally.  As noted above, "federal courts may not address the validity or enforceability of the contract as a whole." Ticknor, 265 F.3d at 937 (citing Prima Paint, 388 U.S. at 401).  Therefore, this issue must be decided in the arbitration.

However, to the extent the Plaintiffs' argument affects the enforceability of the arbitration clause, the court finds that the guaranty agreements bind the Plaintiffs in their individual capacities.  "Whether or not a particular contract shows a clear intent that one of the parties was contracting as an individual or in a representative capacity, must be determined *from the contract itself*." Lazarov v. Klyce, 255 S.W.2d 11, 14 (Tenn. 1953).  "The ascertainment of the intention of the parties to a written contract is a question of law, rather than a question of fact." Hamblen County v. City of Morristown, 656 S.W.2d 331, 335-36 (Tenn. 1983).

The Plaintiffs argue that they cannot be compelled to arbitrate because the Plaintiffs signed the guaranty agreements "not as individuals, but rather as officers of" Spinks Investments.  (Pls.' Mem. Opp'n Mot. Compel Arbitration 9.)  Further, the Plaintiffs argue that South Carolina, not Tennessee law applies in determining whether the guaranty is enforceable and valid.  (Id.)  As an initial matter, the guaranty agreements state that "this Guaranty and Assumption of Obligations shall be governed by and construed in accordance with the laws of the State of Tennessee."  (Def.'s Mem. Supp. Mot. Compel Arbitration Ex. 3 (Liberty Guaranty) & Ex. 4 (Greenville Guaranty).)  Based on the plain language of the guaranty agreements, Tennessee law applies.

In Kubota Tractor Corp. v. Fugate Implement Co., the Tennessee Court of Appeals addressed the question of whether the language of a guaranty bound the guarantor individually

or in a representative capacity.  1989 WL 57477 (Tenn. Ct. App. June 2, 1989) (unpublished).

Although the guarantor signed the guaranty "Fugate Imp Co Inc By John N Fugate II," the court

found that the clear intent of the guaranty was to bind the guarantor individually.  Id. at ** 1-2.

The court noted that "[s]tanding alone and without more, the form of Fugate's signature would

be the classic example of a corporate officer signing in a representative capacity only.  But in

this context it is affixed to a guaranty contract."  Id. at *2.  The court found that "[t]he form and

content of the guaranty presents a clear intention to bind Fugate personally rather than the

company of which Fugate was president at the time, namely Dealer.  One primary consideration

is the fact that the indebtedness which was being guaranteed was that of Dealer."  Id. at *3.  The

court concluded that

> The very nature of a guaranty is to bring into existence the obligation of the
> guarantor in addition to the obligation of the debtor thereby sought to be secured.
> The nature of the obligation undertaken by Kubota and Fugate is quite evident from
> the language of the guaranty.  This document is a collateral undertaking by which
> Fugate secures the debt of the Dealer.  If we were to hold otherwise we would have
> to hold that it is not an obligation at all and we would completely destroy its effect.

Id. at *4.

Like in Kubota, in the case at bar, the language of the guaranty agreements plainly

indicates that the intention was to bind the Plaintiffs' personally.  The guaranty agreements state

in the first line that the guaranty and assumption of obligations is given by "Steve Spinks, Jeff

Spinks and Whitney Spinks."  (Def.'s Mem. Supp. Mot. Compel Arbitration

Ex. 3 (Liberty Guaranty) & Ex. 4 (Greenville Guaranty).)   In addition, the guaranty agreements

state that "each of the undersigned hereby personally and unconditionally . . . guarantees to

Krystal . . . for the term of the [Franchise] Agreement . . . that Spinks Investments, Inc.

9

("Franchisee") . . . shall punctually pay all sums due Krystal under, and perform each and every

undertaking, agreement and covenant set forth, in the Agreement

. . . ." (Id. Ex. 3 (Liberty Guaranty) & Ex. 4 (Greenville Guaranty).)   Further, the guaranty

agreements state that the Plaintiffs "agrees to be personally bound by, and personally liable for

the breach of, each and every provision in the Agreement, both monetary obligations to take or

refrain from taking specific actions or to engage or refrain from engaging in specific activities,

including without limitation the provisions of Paragraphs 9 and 12."  (Id. Ex. 3 (Liberty

Guaranty) & Ex. 4 (Greenville Guaranty).)   Based on the foregoing, the guaranty agreements

bind the Plaintiffs in their individual capacity.

### B.  Waiver

Finally, the Plaintiffs argue that Krystal has waived its right to enforce the alleged

arbitration clause.  "Although th[e] principle of default is akin to waiver, the circumstances

giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration,

are not to be lightly inferred."  Microstrategy, 268 F.3d at 249 (internal quotation marks omitted).

"A party may waive its right to insist on arbitration if the party so substantially utilizes the

litigation machinery that to subsequently permit arbitration would prejudice the party opposing

the stay." Id. (internal quotation marks omitted).  "But even in cases where the party seeking

arbitration has invoked the 'litigation machinery' to some degree, the dispositive question is

whether the party objecting to arbitration has suffered *actual prejudice*."  Id. (internal quotation

marks omitted).  "Neither delay nor the filing of pleadings by the party seeking a stay will suffice,

without more, to establish waiver of arbitration."  Id. (internal quotation marks omitted).

"However, delay and the extent of the moving party's trial-oriented activity are material factors in

assessing a plea of prejudice." Id. (internal quotation marks omitted).  "The party opposing arbitration bears the heavy burden of proving waiver." Microstrategy, 268 F.3d at 250 (internal quotation marks omitted).

"The actual prejudice required to support a finding of waiver can be substantive prejudice to the legal position of the party opposing arbitration . . . . or the unnecessary delay or expense that results when an opponent delays invocation of its contractual right to arbitrate." Hasco, Inc. v. Schuyler, Roche & Zwirner, No. 97-2618, 1998 WL 957454, at *2 (4th Cir. Sept. 22, 1998) (internal quotation marks and citations omitted) (alteration in original).   Prejudice is determined "contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances." Id. (internal quotation marks omitted).

The Defendant's litigation activities are not inconsistent with a desire to arbitrate.  First, filing a motion to change venue is not inconsistent with the Defendant's request to arbitrate. "Under the Federal Rules of Civil Procedure, a defendant, at its option, may contest venue before filing an answer.  By virtue of this arrangement, a party is not required to litigate any issue-including arbitrability-in an improper or inconvenient forum." Am. Heart Disease Prevention Found. v. Hughey, No. 96-1199, 1997 WL 42714, at *3 (4th Cir. Feb. 4, 1997) (unpublished) (internal citation omitted) .  In addition, the Defendant's removal of this action from state to federal court does not amount to a waiver.  See Mercury, 656 F.2d at 940 (removing action from state to federal court does not constitute waiver).  Finally, no substantial discovery has been undertaken in this action and this case has only been pending for five months.  Based on

the foregoing, the court finds that the Plaintiffs have not sufficiently demonstrated that the Defendant has waived its right to compel arbitration.

Therefore, the court grants the Defendant's motion to compel arbitration and dismisses this matter.  See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

It is therefore

**ORDERED** that Defendant's motion to compel arbitration, docket number 48, is granted. It is further

**ORDERED** that this action is dismissed.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
December 20, 2007